[892 NYS2d 596]

Kemper Insurance Companies, Appellant, v State of New York, Respondent. (Claim No. 108940.)

Third Department, December 31, 2009

## APPEARANCES OF COUNSEL

*Ernstrom & Dreste, L.L.P.*, Rochester (*Theodore M. Baum* of counsel), for appellant.

*Andrew M. Cuomo, Attorney General*, Albany (*Paul Groenwegen* of counsel), for respondent.

## OPINION OF THE COURT

GARRY, J.

In March 2000, Haseley Construction entered into a contract with defendant to reconstruct part of a roadway in the Town of Niagara, Niagara County (hereinafter the Military Road Project). Claimant, as Haseley's surety, provided performance and payment bonds for the Military Road Project on which Haseley was named as the principal and defendant was named as obligee. In August 2001, defendant declared Haseley in default and formally terminated it from the project. The parties have stipulated that at the time of Haseley's termination, defendant was holding $579,779.68 which was due or to become due to Haseley in connection with the Military Road Project. In October 2001, defendant and claimant entered into a takeover agreement by which claimant agreed to complete the Military Road Project,

and defendant agreed to pay all sums due and payable under the contract to claimant, including any sums already due to Haseley. Thereafter, claimant twice sent correspondence to defendant confirming that neither the Department of Transportation nor the Office of the State Comptroller were to authorize or release any moneys to Haseley arising out of the Military Road Project.

In June 2002, the Internal Revenue Service (hereinafter IRS) issued a notice of levy to defendant with reference to outstanding tax obligations owed by Haseley. In January 2003, the IRS issued a second notice of levy to defendant. In response to the second notice of levy, the Office of the State Comptroller issued payment of $579,779.68 to the IRS, using funds from the Military Road Project (hereinafter referred to as the project funds). Defendant did not then know nor inquire whether Haseley's tax obligations arose from the Military Road Project. Neither defendant nor the IRS advised claimant of the notices of levy or of defendant's payment of the project funds to the IRS.

Claimant completed the Military Road Project, satisfied all of its obligations under the surety and takeover agreements, and demanded payment from defendant. Defendant's payment did not include the sum that had been turned over to the IRS, and the funds paid were insufficient to complete the work and cover claimant's payments to laborers, suppliers, and others under the payment bonds, causing claimant to suffer a loss. Therefore, in May 2003, claimant served a notice of intention to file a claim before the Court of Claims. This claim was held in abeyance during the pendency of an action filed by claimant against the United States in the United States District Court for the Western District of New York, in which claimant contended that the IRS had wrongfully levied on the project funds. In April 2006, claimant and the United States executed a stipulation of judgment in the federal action, agreeing that, at the time of the levy, claimant was entitled to $535,885.78.[1] This was approved by the federal court in May 2006. Upon appeal, claimant accepted $300,000 to settle the federal action.

Claimant thereafter amended its claim against defendant in the Court of Claims to allege that defendant wrongfully diverted the contract funds and breached the takeover agreement, and to

---

1. Claimant's brief indicates that the difference of approximately $43,893.90 between this amount and the amount that defendant turned over in response to the levy was retained by the IRS to satisfy Haseley's unpaid employment taxes related to the Military Road Project.

seek damages of $235,885.78.[2] Claimant and defendant executed a stipulation of facts and submitted cross motions for summary judgment to the court based upon the stipulated facts. The court found that claimant's exclusive remedy was a wrongful levy action in federal court, granted defendant's cross motion for summary judgment dismissing the amended claim, and denied claimant's motion. Claimant now appeals.

Under the Internal Revenue Code, any person[3] in possession of property that is subject to a federal tax levy and not subject to attachment or execution under judicial process must surrender the property to the IRS upon demand (*see* 26 USC § 6332 [a]). One who refuses to honor a levy may be held liable to the United States for damages and a penalty (*see* 26 USC § 6332 [d]; *United States v National Bank of Commerce*, 472 US 713, 721 [1985]). A person in possession of property subject to levy who honors a federal tax levy is discharged from liability "to the delinquent taxpayer and any other person" (26 USC § 6332 [e]). This immunity from liability is not, however, absolute. A federal regulation establishes an "[e]xception for certain incorrectly surrendered property" as follows: "Any person who surrenders to the [IRS] property or rights to property not properly subject to levy in which the delinquent taxpayer has no apparent interest is not relieved of liability to a third party who has an interest in the property" (26 CFR 301.6332-1 [c] [2]). Where the delinquent taxpayer does have an apparent interest in the property or rights to property in dispute, a person who makes a "good faith determination that [the property in question] has been levied upon" is relieved of liability for surrendering it, even if it is later determined that the levy was wrongful (26 CFR 301.6332-1 [c] [2]). Claimant contends that the regulatory exception from immunity is applicable to defendant because Haseley had no apparent interest in the project funds at the time defendant turned them over to the IRS and, further, because defendant did not make the requisite good faith inquiry before turning over the project funds.

Federal laws do not themselves create property rights; instead, they attach consequences to property rights created by state laws (*see United States v National Bank of Commerce*, 472

---

**2.** This amount is the difference between the amount to which the United States stipulated that claimant was entitled at the time of the levy and the amount claimant accepted from the United States to settle the federal action.

**3.** The word "person" as used here includes a state (*see Sims v United States,* 359 US 108, 112 [1959]).

US at 722). For this reason, in applying federal tax laws, "state law controls in determining the nature of the legal interest which the taxpayer had in the property" (*Aquilino v United States*, 363 US 509, 513 [1960], quoting *Morgan v Commissioner*, 309 US 78, 82 [1940]; *accord United States v National Bank of Commerce*, 472 US at 722). If, under state law, it is determined that a taxpayer has an interest in the property that satisfies a federal tax statute, "state law is inoperative" and the federal statute determines the tax consequences (*United States v Bess*, 357 US 51, 56-57 [1958]; *see United States v National Bank of Commerce*, 472 US at 722).

As the agreement between Haseley and defendant was a construction contract, all funds under the contract were subject to a statutory trust imposed by Lien Law article 3-A, which arose automatically upon the execution of the contract (*see* Lien Law § 70 [4]; § 71 [5]; *Matter of RLI Ins. Co., Sur. Div. v New York State Dept. of Labor*, 97 NY2d 256, 262 [2002]; *City of New York v Cross Bay Contr. Corp.*, 93 NY2d 14, 19 [1999]). The purpose of the trust is to "safeguard the rights of those working on construction projects by providing for the payment of obligations incurred in performing the contract" (*AMG Indus. v Eckert Co.*, 279 AD2d 717, 719 [2001] [internal quotation marks and citation omitted]). The trust res consists not only of funds already received, but also of the right to receive funds in the future, including prospective payments that are contingent upon the trustee's future performance of its contractual obligations (*see* Lien Law § 70 [1] [a]; *Canron Corp. v City of New York*, 89 NY2d 147, 156 [1996]). Any use of the trust funds other than the payment of claims under the contract, whether or not well intended on the trustee's part, is an improper diversion of trust assets (*see LeChase Data/Telecom Servs., LLC v Goebert*, 6 NY3d 281, 289 [2006]). General contractors and subcontractors become trustees of any funds they receive under such a contract (*see* Lien Law § 70 [2]; *City of New York v Cross Bay Contr. Corp.*, 93 NY2d at 19-20; *AMG Indus. v Eckert Co.*, 279 AD2d at 719).

Prior to its termination from the contract, Haseley held a "right of action" in all funds due or to become due to it under the contract (Lien Law § 70 [1]; *see Matter of RLI Ins. Co., Sur. Div. v New York State Dept. of Labor*, 97 NY2d at 262). However, Haseley held this right of action solely as a trustee, and no beneficial interest in the funds themselves could vest in Haseley until all trust claims had been paid or discharged (*see Matter of*

*RLI Ins. Co., Sur. Div. v New York State Dept. of Labor*, 97 NY2d at 263). Until all such claims had been paid, Haseley " '[did] not have a sufficient beneficial interest in the moneys, due or to become due . . . under the contract, to give [Haseley] a property right in them,' " except for whatever balance, if any, might later remain after all claims had been paid (*Canron Corp. v City of New York*, 89 NY2d at 157-158 [emphasis omitted], quoting *Aquilino v United States of Am.*, 10 NY2d 271, 282 [1961]; *accord City of New York v Cross Bay Contr. Corp.*, 93 NY2d at 20). It has been held that a tax lien asserted by the United States against the property of a contractor-taxpayer is ineffective to reach trust funds when subcontractors' claims are outstanding (*see Aquilino v United States of Am.*, 10 NY2d at 282).[4] Thus, even before it was terminated from the contract, the only property right Haseley may have had in the project funds was limited to a contingent interest in any balance that might eventually remain after all project claims had been paid.

▮ Even this contingent interest was cut off by defendant's own actions prior to the first notice of levy. By formally terminating Haseley from the contract and entering into the takeover agreement, defendant eliminated whatever beneficial interest, if any, Haseley might have retained in the project funds. Having thus terminated all of Haseley's actual interest in the project funds, there was no basis on which defendant could have determined that Haseley had an "apparent interest" in those funds at the time that it turned them over to the IRS (*see* 26 CFR 301.6332-1 [c] [2]; *see also Victore Ins. Co. v City of Bowie*, 23 SW3d 499, 504-505 [Tex Ct App 2000]). At that time, defendant could have asserted that it was not in possession of Haseley's property or otherwise obligated to Haseley as a defense against the IRS levies (*see United States v National Bank of Commerce*, 472 US at 724).[5] Thus, because Haseley had no apparent interest in the project funds at the time that defendant turned them over to the IRS, defendant was not relieved of liability to claimant under the exception established by 26

4. This holding was based upon Lien Law former § 36-a, the predecessor to Lien Law article 3-A (*see generally* L 1942, ch 808, § 15, as amended by L 1959, ch 696, §§ 1-2).

5. Although claimant and the United States later agreed that the project funds included approximately $43,893.90 to which the IRS had a valid claim in satisfaction of Haseley's unpaid tax obligations, that does not give rise to any property interest on Haseley's part, as opposed to the IRS, in the project funds.

CFR 301.6332-1 (c) (2) to the safe harbor immunity of 26 USC § 6332 (e).

 In dismissing the claim, the Court of Claims found that if the project funds were wrongfully turned over to the IRS, claimant's exclusive remedy was an action in federal court. In this regard, the court relied upon 26 CFR 301.6332-1 (c) (3), which provides that "taxpayers and third parties who have an interest in property surrendered in response to a levy may secure from the [IRS] the administrative relief provided for in [26 USC § 6343 (b)] or may bring suit to recover the property under [26 USC § 7426]." Both of the cited provisions, however, address remedies against the United States. 26 USC § 6343 (b) provides that the Secretary of the Treasury may return property that has been wrongfully levied upon, and 26 USC § 7426 provides that any third party, other than the taxpayer, may bring a civil action against the United States to recover property that was wrongfully levied upon. Neither provision makes any reference to claims against third parties or anyone other than the United States. A determination that the existence of these remedies against the United States also forecloses all remedies against other parties would render meaningless the plain language of 26 CFR 301.6332-1 (c) (2) that a person who surrenders property in which the delinquent taxpayer has no apparent interest "is not relieved of liability to a third party who has an interest in the property." Such an interpretation "cannot be countenanced" (*Matter of Polokoff-Zakarin v Boggess*, 62 AD3d 1141, 1143 [2009]; *see generally* McKinney's Cons Laws of NY, Book 1, Statutes § 231). Further, as previously discussed, in the application of a federal tax statute, state law becomes "inoperative" and is replaced by federal law *only* when a property right has been found to exist under state law—which is not the case here (*see United States v National Bank of Commerce*, 472 US at 722; *United States v Bess*, 357 US at 56-57). We therefore find that the Court of Claims erred in dismissing the claim on the ground that claimant's exclusive remedy was a federal action.

Claimant moved for summary judgment in its favor on its breach of contract claim. In the takeover agreement, defendant agreed that it would pay to claimant "[a]ll sums now due and payable and to become due and payable" on the Military Road Project, "subject to applicable liens and setoffs . . . as if there had been no declared termination of employment of [Haseley]." The parties stipulated that claimant fully performed its obliga-

tions under the takeover agreement, that defendant's project engineer approved all of claimant's applications for payment, that defendant did not fully pay claimant for the work, and that claimant suffered a loss in consequence. Claimant established, through the stipulated facts, a prima facie case entitling it to judgment as a matter of law on its breach of contract claim (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]; *Clearmont Prop., LLC v Eisner*, 58 AD3d 1052, 1055 [2009]), thus shifting the burden to defendant to demonstrate the existence of triable issues of fact (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *Heritage Springs Sewer Works, Inc. v Boghosian*, 61 AD3d 1038, 1040-1041 [2009]). Defendant did not meet this burden and, therefore, claimant's motion for summary judgment should have been granted.

MERCURE, J.P., SPAIN, ROSE and KANE, JJ., concur.

Ordered that the judgment is reversed, on the law, without costs, defendant's cross motion denied, claimant's motion granted and summary judgment awarded to claimant.