[968 NE2d 439, 945 NYS2d 202]

MOUNT VERNON CITY SCHOOL DISTRICT, Respondent-Appellant,
v NOVA CASUALTY COMPANY, Appellant-Respondent, et al.,
Defendant.

Argued February 14, 2012; decided April 3, 2012

## POINTS OF COUNSEL

*Law Office of Neil B. Connelly, Esq. PLLC*, White Plains (*Neil B. Connelly* of counsel), for appellant-respondent. I. The entire contract price for the Mount Vernon City School District public improvement was a trust fund under article 3-A of the Lien Law. (*Aquilino v United States of Am.*, 10 NY2d 271; *Gramatan-Sullivan, Inc. v Koslow*, 240 F2d 523; *City of New York v Cross Bay Contr. Corp.*, 93 NY2d 14.) II. The Mount Vernon City School District participated in the diversion of trust assets. (*Matter of RLI Ins. Co., Sur. Div. v New York State Dept. of Labor*, 97 NY2d 256; *City of New York v Cross Bay Contr. Corp.*, 93 NY2d 14; *Onondaga Commercial Dry Wall Corp. v 150 Clinton St.*, 25 NY2d 106; *Aquilino v United States of Am.*, 10 NY2d 271.) III. The Mount Vernon City School District's diversion of Lien Law article 3-A trust funds discharged Nova Casualty Company on the performance bond. (*Roel Partnership v Amwest Sur. Ins. Co.*, 258 AD2d 780; *Smith v Molleson*, 148 NY 241; *Midland Steel Warehouse Corp. v Godinger Silver Art*, 276 AD2d 341; *Central Fed. Sav. & Loan Assn. of Nassau County v Pergolis*, 173 AD2d 587; *Matter of Union Indem. Ins. Co. of N.Y.*, 220 AD2d 339; *United States Fid. & Guar. Co. v Braspetro Oil Servs. Co.*, 369 F3d 34.) IV. The Mount Vernon City School District violated the terms of the bond. (*Smith v Molleson*, 148 NY 241; *Abiele Contr. v New York City School Constr. Auth.*, 91 NY2d 1; *Aron v Gillman*, 309 NY 157; *Sutton v East Riv. Sav. Bank*, 55 NY2d 550; *Legend Artists Mgt. v Blackmore*, 273 AD2d 91; *Caristo Constr. Corp. v Diner's Fin. Corp.*, 21 NY2d 507; *Aquilino v United States of Am.*, 10 NY2d 271; *Zuckerman v City of New York*, 49 NY2d 557.) V. The decisions below contradict prior decisions by the Court of Appeals. (*LeChase Data/Telecom Servs., LLC v Goebert*, 6 NY3d 281; *Aspro Mech. Contr. v Fleet Bank*, 1 NY3d 324; *Matter of RLI Ins. Co., Sur. Div. v New York State Dept. of Labor*, 97 NY2d 256; *Caristo Constr. Corp. v Diners Fin. Corp.*, 21 NY2d 507.) VI. The decisions below present a conflict among the Departments of the Appellate Division. (*Kemper Ins. Cos. v State of New York*, 70 AD3d 192; *Matter of RLI Ins. Co., Sur. Div. v New York State Dept. of Labor*, 97 NY2d 256; *Canron Corp. v City of New York*, 89 NY2d 147; *Aquilino v United States of Am.*, 10 NY2d 271; *City of New York v Cross Bay Contr. Corp.*, 93 NY2d 14.) VII. The issues presented are novel and of public importance. (*Canron Corp. v City of New York*, 89 NY2d 147.)

*Cohen & Perfetto*, New York City (*Andrea Tersigni* and *Anthony L. Tersigni* of counsel), for respondent-appellant. I. All of

the Mount Vernon City School District's attorneys' fees and expenses are recoverable under both the subject construction contract and bond. (*City of Elmira v Larry Walter, Inc.*, 150 AD2d 129; *United States Fid. & Guar. Co. v Braspetro Oil Servs. Co.*, 369 F3d 34; *Hooper Assoc. v AGS Computers*, 74 NY2d 487.) II. Even in the absence of any attorneys' fee provision, the Mount Vernon City School District is still entitled to recover all of its attorneys' fees and litigation expenses since DJH Mechanical Associates' breach necessitated litigation against another party. (*Jamaica Commodity Trading Co. Ltd. v Connell Rice & Sugar Co., Inc.*, 766 F Supp 138; *Jones v Morgan*, 90 NY 4.)

### OPINION OF THE COURT

CIPARICK, J.

On this appeal, we are called upon to determine whether defendant Nova Casualty Company (Nova) is discharged from its surety obligation to plaintiff Mount Vernon City School District (the School District) on the bases that the School District allegedly violated New York's Lien Law by improperly diverting construction contract payments constituting trust fund assets to a nonbeneficiary and breached the terms of the parties' performance bond. We hold that under the facts of this case, Nova has not demonstrated that discharge of its surety obligation is warranted. We also consider whether the School District is entitled to attorneys' fees expended in the prosecution of this litigation, and conclude that the request for attorneys' fees was properly denied.

### I.

On December 26, 2003, the School District and defendant DJH Mechanical Associates, Inc. (DJH) contracted for DJH to perform heating, ventilation and air conditioning (HVAC) work at A.B. Davis Middle School for a price of $919,000. The contract mandated that the School District make progress payments to DJH based upon DJH's application for payment for work performed during the preceding calender month. The School District was permitted to terminate the contract if DJH, among other things, failed to furnish adequate assurance that DJH could complete the work.

The contract also required DJH to obtain a performance bond, which DJH secured from Nova, a compensated surety. The performance bond incorporates the terms of the underlying construction contract and provides that "[t]he Surety shall not

be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations."

As relevant to the School District's cross appeal, the contract between the School District and DJH further provides:

> "The costs of finishing the Work include, without limitation, all reasonable attorney's fees, additional title costs, insurance, additional interest because of any delay in completing the Work, and all other direct and indirect and consequential damages incurred by the Owner by reason of the termination of the Contract as stated herein."

The performance bond as it relates to legal costs provides that

> "[t]o the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for: . . .

> "[a]dditional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety."

In June 2004, while the contract work was underway, the School District received a notice to withhold/release payment (notice of cross-withholding) from the Department of Labor (DOL). The notice stemmed from DOL's investigation of alleged prevailing wage violations by DJH on a previously performed public works project[1] and requested that the School District withhold $863,197.40 in contract payments pending completion of the investigation. A November 2004 application summary indicates that DJH had submitted nine applications for progress payments. In January 2005, DOL gave the School District notice that it could release $649,197.40 to DJH, but directed the School District to send the balance of $214,000 to DOL in satisfaction of DJH's debt. The president of DJH signed a provision of the notice assigning to DOL $214,000 in earned progress payments. The School District subsequently remitted that amount to DOL. Work ostensibly progressed but at a very slow pace

---

1. The project was later determined to be a contract with the Mahopac School District (the Mahopac project).

and, in July 2006, the School District terminated its contract with DJH due to the contractor's failure to substantially complete the HVAC work. When the School District turned to Nova to perform under the bond and fund the work left remaining upon DJH's default, Nova disclaimed liability and refused to complete the project.

The School District commenced this breach of contract action against Nova, seeking damages for the cost of completing the project and also attorneys' fees, and against DJH, seeking damages for its failure to complete the contracted-for work. DJH defaulted.

Nova answered and moved for summary judgment, arguing, among other things, that the School District violated article 3-A of the Lien Law[2] by diverting $214,000 of trust fund assets reserved for completion of the HVAC work to satisfy debts incurred on the Mahopac project. Nova contended that but for the improper payment to DOL, the School District would have had sufficient funds to complete its HVAC project and Nova's surety obligation would not have been triggered. Nova further alleged that the School District breached the performance bond by "illegally reducing the contract funds," thereby discharging Nova from its duty to perform. In response, the School District admitted that it released $214,000 to DOL upon DJH's

---

2.  Article 3-A provides that funds

    "received by an owner for or in connection with an improvement of real property in this state, including a home improvement loan, or received by a contractor under or in connection with a contract for an improvement of real property, or home improvement, or a contract for a public improvement in this state, or received by a subcontractor under or in connection with a subcontract made with the contractor for such improvement of real property including a home improvement contract or public improvement or made with any subcontractor under any such contract, and any right of action for any such funds due or earned or to become due or earned, shall constitute assets of a trust for the purposes provided in section [71]" (Lien Law § 70 [1]).

    Section 71 (1) provides that trust assets held by an owner "shall be held and applied for payment of the cost of improvement." Trust assets held by a contractor or subcontractor "shall be held and applied for [certain specified] expenditures" including "payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen" who are trust beneficiaries; payment of payroll and other project-related taxes; payment of project-related benefits, wage supplements and surety bond premiums; and payments to which the owner is entitled (see id. § 71 [2] [a]-[f]; [5]). Pursuant to section 72, any transfer or application of funds to a purpose other than those specified in section 71 (1) and (2) is a diversion of trust assets. Such misappropriation constitutes larceny (id. § 79-a).

authorization, and asked the court to search the record to grant it partial summary judgment on the issue of Nova's liability.

Supreme Court declined to grant either party summary judgment. In denying Nova's motion, the court observed that the instant case was distinguishable from *Matter of RLI Ins. Co., Sur. Div. v New York State Dept. of Labor* (97 NY2d 256 [2002]), where the surety had completed the project at issue and was therefore subrogated to the rights of article 3-A trust fund beneficiaries. The court stated that "if Nova had undertaken to complete DJH's performance, it would have been subrogated to the rights of both Plaintiff and DJH, and if the $214,000.00 payment involved payment of underpaid wages on an unrelated job, Nova would have a claim against Plaintiff for improper diversion of trust assets" (30 Misc 3d 1231[A], 2008 NY Slip Op 52725[U], *11 [2008]). As Nova did not complete DJH's performance, it "therefore . . . has no right as a subrogee to unpaid contract . . . and trust fund monies" (*id.* at *13). The court determined that questions of fact remained as to whether the payment to DOL was an improper diversion of trust fund assets and whether the payment violated the bond by increasing Nova's risk of liability.

Both Nova and the School District appealed, and Supreme Court ordered bifurcated trials. The liability phase was tried before a jury in March 2009. The jury returned a verdict in the School District's favor, finding that DJH breached its contract with the School District by failing to complete its work and waived its right to terminate the contract.

The issues before Supreme Court post-trial were: (1) whether the School District's $214,000 payment to DOL relieved Nova of liability under the performance bond and (2) whether the School District could recover attorneys' fees for completing the project and prosecuting its claim in this litigation. Supreme Court held that the School District's payment to DOL did not excuse Nova's performance under the bond. The court again emphasized that Nova had not completed performance, and thus had "no right as a subrogee to [the] unpaid Contract Price or any Trust Fund monies that were wrongfully diverted" (30 Misc 3d 1233[A], 2009 NY Slip Op 52793[U], *11 [2009]). Supreme Court rejected Nova's argument that the payment violated the performance bond by increasing its liability, because the $214,000 at issue was due to DJH for its past performance. As the School District had not terminated its contract with DJH at the time of payment, the School District was permitted to pay DOL at DJH's request in lieu of paying DJH directly.

With regard to the School District's claim for attorneys' fees, the court held that the bond allowed only for attorneys' fees incurred in the completion of the project, not for expenditures made in pursuit of this litigation. Quoting *United States Fid. & Guar. Co. v Braspetro Oil Servs. Co.* (369 F3d 34, 77 [2d Cir 2004]), which Supreme Court found "had a clause identical to" the clause at issue here, it held that " '[i]t was not unmistakably clear that the use of the term ["]legal costs" in the Bond[ ] was intended to obligate the Suret[y] to pay . . . attorneys' fees in litigation between the Suret[y] and the Obligee[ ] over the Bond[ ]' " (2009 NY Slip Op 52793[U], *14). The parties then stipulated to the amount of attorneys' fees owed for completion of the project, and Supreme Court entered judgment for a set sum in the amount of $121,940.16 in favor of the School District.

Nova and the School District both appealed, and the Appellate Division affirmed (*see Mount Vernon City School Dist. v Nova Cas. Co.*, 78 AD3d 1028, 1029 [2d Dept 2010]). The court agreed that because "Nova was not a fully paying and performing surety . . . it did not succeed to the rights of the owner or the Lien Law article 3-A trust beneficiaries" (*id.*). Thus, the School District's allegedly improper payment did not allow Nova to avoid liability under the performance bond. The court further held that, "since the $214,000 represented a sum earned by DJH as a progress payment under the contract, Nova failed to establish, as a matter of law," that the School District breached the performance bond (*id.* at 1030). Finally, the court concluded that "neither the contract nor the performance bond contain unmistakably clear language obligating Nova to reimburse [the School District] for its attorney's fees in this litigation" (*id.* [internal quotation marks and citation omitted]).

We granted Nova's motion and the School District's cross motion for leave to appeal (16 NY3d 707 [2011]) and now affirm.

## II.

As a general rule, a surety may assert affirmative defenses to an obligee's claim of breach of contract based on the obligee's noncompliance with the terms of the performance bond or material alterations to the terms of the underlying contract (*see* 23 Lord, Williston on Contracts § 61:31 [4th ed]; *Tishman Westwide Constr. LLC v ASF Glass, Inc.*, 33 AD3d 539, 540 [1st Dept 2006]). "Under general contract rules, an obligation may not be altered without the consent of the party who assumed the obligation. [As] [s]uretyship is a contractual relation . . . the

[obligee] and the principal debtor may not alter the surety's undertaking to cover a different obligation without the surety's consent" (*Bier Pension Plan Trust v Estate of Schneierson*, 74 NY2d 312, 315 [1989]). Thus, where an obligee—in the context of a construction contract, the owner—materially alters the terms of the contract and increases the risks imposed on the surety by such acts as modifying the duties of the principal-contractor, extending the time for the principal's performance, or making overpayments or premature payments, the surety may be discharged (*see id.*; *see also* Restatement [Third] of Suretyship & Guaranty § 37 [1]-[3]; Egan, *Discharge of the Performance Bond Surety*, in Gallagher, Suretyship, at 12-1–12-3 [1993] [hereinafter Egan]).

Though it was the early rule in New York that a surety obligation is "*strictissimi juris*, and [the surety] is discharged by any alteration of the contract . . . whether material or not, and . . . whether it is or is not to [the surety's] injury" (*Page v Krekey*, 137 NY 307, 314 [1893]), we have declined to apply the rule to compensated sureties in the context of construction contracts (*see St. John's Coll., Fordham v Aetna Indem. Co.*, 201 NY 335, 341-342 [1911], citing *Guaranty Co. v Pressed Brick Co.*, 191 US 416 [1903]; *see also* 23 Lord, Williston on Contracts § 61:5 [4th ed] ["(t)he corporate compensated surety is not favored with the solicitude shown the private, uncompensated surety"]). In such a case, discharging the surety is inappropriate where the purported alteration cannot "be said to affect the surety adversely or to have any effect whatever upon the contract or the defendant's obligation" (*St. John's Coll., Fordham* at 342; *see also* Egan, at 12-1 ["(A) compensated surety is usually obligated to demonstrate affirmatively actual prejudice arising from the act of the obligee. In the absence of actual prejudice, the compensated surety usually remains bound"]). It is incumbent on the surety seeking to be discharged to demonstrate that an obligee's act has so prejudiced it that its obligation is impaired (*see* Restatement [Third] of Suretyship & Guaranty § 49).

Here, Nova argues primarily that the School District's payment to DOL of $214,000 in contract funds violated the Lien Law, and that the improper diversion constituted a breach of contract, which substantially increased Nova's risk of loss on the performance bond. As such, Nova submits, it was discharged from its duty to perform. Reserving judgment on whether the payment indeed constituted a Lien Law violation, as that issue was not squarely decided by the courts below (*see* 78 AD3d at

1030), we nonetheless conclude that any such violation would provide no grounds, on the record before us, for Nova's discharge.

Under article 3-A of the Lien Law, funds received by an owner and/or contractor in connection with a contract for a public improvement must be held in trust to ensure payment of trust beneficiaries, namely, subcontractors, architects, engineers, surveyors, laborers and materialmen, as well as payment of taxes and expenses incurred by the construction (*see* Lien Law § 70 [1]; § 71 [2]; *see also Caristo Constr. Corp. v Diners Fin. Corp.*, 21 NY2d 507, 512 [1968]). "[O]nce a trust comes into existence, its funds may not be diverted for non-trust purposes [and] [u]se of trust assets for any purpose other than the expenditures authorized [by statute] . . . constitutes an improper diversion of trust assets, regardless of the propriety of the trustee's intentions" (*Matter of RLI Ins. Co., Sur. Div. v New York State Dept. of Labor*, 97 NY2d 256, 263 [2002], citing *Canron Corp. v City of New York*, 89 NY2d 147, 154 [1996]; *see* Lien Law § 72). This "prohibition against diversion of funds to purposes unrelated to a particular improvement was intended to eradicate the practice of 'pyramiding,' in which contractors use loans or payments advanced in the course of one project to complete another" (*Matter of RLI*, 97 NY2d at 264).

However, whether the School District's payment of contract funds to DOL as DJH's assignee violated the Lien Law is irrelevant to Nova's surety obligation, because Nova did not perform by funding completion of the work upon DJH's default as required under the performance bond. As such, and as found by the courts below, it is not subrogated to the rights of the article 3-A trust beneficiaries as a completing surety and lacks capacity to raise any alleged violation of the Lien Law. This case is therefore wholly distinguishable from those cases on which Nova relies, where we allowed subrogees of trust beneficiaries to assert superior claims to trust assets and recognized their right to invoke the Lien Law to challenge wrongful diversions (*see Matter of RLI*, 97 NY2d at 263-265 [surety that had completed construction of a public improvement project on behalf of a defaulting contractor had a right to funds still in possession of the project owner superior to a claim filed by DOL]; *Caristo*, 21 NY2d at 510-511 [general contractor who, upon subcontractor's default, paid suppliers and other subcontractors pursuant to a payment bond was entitled to trust funds improperly diverted to the defendant factor]).

Furthermore, Nova has not established that the payment adversely affected or, for that matter, had any effect whatsoever on its surety obligations. Nova repeats the conclusory assertion that its "loss on the Bond was substantially increased," but does not illustrate how or to what extent. Rather, Nova has contended that had the $214,000 not been remitted to DOL, those funds could have been applied to the cost of completion of the HVAC work. Yet, the $214,000 consisted of earned funds due to DJH for its past performance on the contract and, presumably, was already accounted for. The payment was neither in excess of what was owed nor made prematurely, both of which could have exposed Nova to a greater risk of loss (*see* Egan, at 12-3). In short, even assuming that the payment of $214,000 to DOL, rather than DJH, was an improper diversion, it does not appear that the payment committed Nova to a dollar more than that amount for which it bonded DJH. As the payment neither materially altered the contract nor impaired Nova's surety obligation, Nova's discharge is unwarranted (*see Becker v Faber*, 280 NY 146, 152 [1939] [surety not discharged of "that part of the original obligation which still remains and *which remains untouched and unaffected*" by an act of the creditor]).

The dissent opines that in so holding we "facilitate[ ] the School District's participation in [the] long-prohibited practice [of 'pyramiding']" (dissenting op at 40). However, nothing we have said condones that practice or insulates the School District from any claims that may properly be asserted by an article 3-A trust beneficiary who, as a result of the School District's payment of contract funds to DOL, was left unpaid. We simply conclude that Nova, which bears the burden of establishing grounds for its discharge, has yet to show how its surety obligation was impaired. Even if, as the dissent concludes, "[i]t is difficult to fathom . . . [that] all trust claims had been paid" (*id.* at 43), we cannot release Nova from the very obligation it contracted to undertake on a hunch. Nova did not demonstrate that the transfer of funds to DOL resulted in any workers, subcontractors or other article 3-A trust beneficiaries having unpaid claims for which the School District reimbursed them, or that such reimbursement was part of the damages claimed against Nova. Though the dissent finds that we "fail[ ] to provide any explanation whatsoever regarding how the diversion of $214,000 that could have been applied toward the completion of the HVAC job did not harm the surety's interests" (*id.* at 44), it is neither our, nor the School District's, burden to do so.

Nova also contends, however, that the School District breached the terms of the performance bond, which provided that "the Balance of the Contract Price shall not be reduced or set off on account of [DJH's] unrelated obligations." To be sure, the unpaid wage claim arising from the Mahopac project was an obligation unrelated to the contract between DJH and the School District. While the $214,000 payment to DOL ultimately satisfied that obligation, however, the School District owed that amount to DJH for completed work. Indeed, the record reflects that the $214,000 was a portion of a larger sum due to DJH based on the School District's approval of the contractor's fifth through ninth applications for progress payments. Thus, the contract price was not reduced or set off on account of DOL's notice of cross-withholding; rather, it was reduced incrementally in proportion to the work performed, as the contract prescribed.

■ We thus conclude that the School District did not breach the terms of the performance bond, and that the alleged illegal diversion of trust funds did not excuse Nova's performance. As surety, Nova breached the performance bond by refusing to complete the project.

## III.

On its cross appeal, the School District argues that the lower courts erred by declining to award the School District attorneys' fees that it incurred in the prosecution of this action because the construction contract and bond at issue provide for recovery of all attorneys' fees, and because Nova's breach occasioned the lawsuit. "Under the general rule, attorneys' fees and disbursements are incidents of litigation and the prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties or by statute or court rule" (*Matter of A.G. Ship Maintenance Corp. v Lezak*, 69 NY2d 1, 5 [1986]). "[T]he court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is *unmistakably clear* from the language of the promise" (*Hooper Assoc. v AGS Computers*, 74 NY2d 487, 492 [1989] [emphasis added]; *see also United States Fid. & Guar. Co. v Braspetro Oil Servs. Co.*, 369 F3d 34, 74 [2004]).

■ Here, paragraph 6 of the bond provides that Nova "is obligated without duplication for" "[a]dditional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from [Nova's] actions or failure to act." The underlying construction contract, which is incorporated by

reference into the performance bond, provides: "The costs of finishing the Work include, without limitation, *all reasonable attorney's fees*, additional title costs, insurance, additional interest because of any delay in completing the Work, and all other direct and indirect consequential damages incurred by the Owner *by reason of the termination of the Contract*" (emphasis added). The School District contends that these dual provisions, and particularly the broad phrase "all reasonable attorney's fees," are inclusive of the expenditures made for purposes of this litigation. However, under a precise reading of the contractual language, which our rule requires, the disputed fees are outside the scope of the agreements, because they were not incurred as a result of the termination of the construction contract, but rather as a result of Nova's breach of its surety obligation. Given the lack of "unmistakably clear" language indicating an intent to provide for an award of attorneys' fees incurred in litigation arising out of Nova's failure to perform, the School District's request for attorneys' fees must be denied.

Accordingly, the order of the Appellate Division should be affirmed, without costs.

Chief Judge LIPPMAN (dissenting in part). In 1930, when the Legislature enacted the predecessor to article 3-A of the Lien Law, it recognized a need to prohibit the damaging practice of "pyramiding" in the construction industry. Because the majority facilitates the Mount Vernon City School District's (the School District) participation in this long-prohibited practice and inexplicably ignores the surety's right to be discharged from the performance bond where the School District breached the bond,[1] thereby depriving the surety of the benefit of its bargain under basic contract principles, I respectfully dissent.

---

1. The construction contract between DJH Mechanical Associates (DJH) and the School District was incorporated by reference into the performance bond and the School District had certain contractual obligations to Nova Casualty Company (Nova) (and vice versa) because the bond was executed for the School District's benefit:

> "[a] suretyship arrangement is, at its core, the confluence of three distinct, yet interrelated, obligations. These obligations are embodied in the tripartite relationship of principal obligor [here, DJH] and obligee [here, the School District]; obligee and secondary obligor [here, Nova]; and secondary obligor and principal obligor. When a secondary obligor is bound to pay for the debt or answer for the default of the principal obligor to the obligee, the secondary obligor is said to have suretyship status. In other words, in transactions giving rise to suretyship status, the secondary obligor [here, Nova] is answerable to the obligee [here,
> *(n. cont'd)*

We have explained that "[i]n the case of a contractor, the so-called trust fund provisions of the Lien Law prohibit[ ] diversion, to purposes unrelated to a particular improvement, of contract payments from the owner which were intended to pay the expense of that improvement, including the cost of labor and materials" (*Aquilino v United States of Am.*, 10 NY2d 271, 275 [1961] [discussing the predecessor to the current version of article 3-A]). In the same spirit, the successor and current provision, article 3-A's prohibition on diverting trust fund assets serves the "remedial purpose of ' "insur[ing] that funds obtained for financing of an improvement of real property and *moneys earned in the performance of a contract for . . . [an] improvement will in fact be used to pay the costs of that improvement*" ' " (*Matter of RLI Ins. Co., Sur. Div. v New York State Dept. of Labor*, 97 NY2d 256, 263 [2002] [citations omitted and emphasis added]). The School District clearly thwarted the purpose of this rule by ensuring that the money earned in the performance of the heating, ventilation and air conditioning (HVAC) contract would be used to pay the costs of the Mahopac School District project.

Although a school district following the direction of the Department of Labor (DOL) may seem to be cast in a more sympathetic light than a surety seeking to disclaim liability for completing a project upon the default of a construction company, the majority misapprehends the nature of the Lien Law. As the majority acknowledges, it is of no import that the School District may have thought it was acting properly in following the directive of the DOL, because the rule prohibiting diversions of trust assets applies regardless of the intentions of the diverter (*see RLI*, 97 NY2d at 263). Additionally, while the majority properly acknowledges the surety's rights to discharge under certain circumstances (*see* majority op at 36), it ignores that such circumstances arose in this case, triggering these rights, and concludes that the surety here was not entitled to discharge and was responsible for completion of the HVAC job.

Lien Law § 72 (1) provides that

> "[a]ny transaction by which any trust asset is paid, transferred or applied for any purpose other than a purpose of the trust . . . before payment or

the School District] in some way with respect to a duty, the cost of which, as between the principal obligor and the secondary obligor, ought to be borne by the principal obligor" (*Chemical Bank v Meltzer*, 93 NY2d 296, 302 [1999] [citations omitted]).

> discharge of all trust claims with respect to the trust, is a diversion of trust assets, whether or not there are trust claims in existence at the time of the transaction, and if the diversion occurs by the voluntary act of the trustee or by his consent such act or consent is a breach of trust."

"Only after all trust claims have been paid or discharged does a beneficial interest in the remaining balance vest in the trustee owner or contractor" (*RLI*, 97 NY2d at 263). In *Kemper Ins. Cos. v State of New York* (70 AD3d 192, 196 [3d Dept 2009]), the court held in favor of the surety where the contractor defaulted and the State, having responded to an Internal Revenue Service (IRS) notice of levy by paying contract funds to the IRS in satisfaction of the contractor's outstanding tax obligations, rendered the remaining trust funds insufficient to pay for the completion of the project. Just like the contractor in *Kemper*, DJH "[did] not have a sufficient beneficial interest in the moneys, due or to become due . . . under the contract, to give [it] a property right in them, except for whatever balance, if any, might later remain after all claims had been paid," and the School District was not entitled to send the $214,000 anywhere other than for use on the HVAC project (*id.* at 197 [internal quotation marks and citations omitted]). When the surety in *Kemper* completed the job, the State's payment "did not include the sum that had been turned over to the IRS, and the funds paid were insufficient to complete the work and cover [the surety's] payments to laborers, suppliers, and others under the payment bonds, causing [the surety] to suffer a loss" (*id.* at 194). That the surety in this case did not complete the HVAC project makes no difference. The same principle applies here; when the School District made the payment to the DOL, Nova's risk of suffering a loss increased and it was therefore relieved of its obligations. It makes little sense to require a surety to complete a job when it is fully aware that the project owner has already diverted (in this case nearly a quarter of the total) funds designated to pay for the project, in violation of the Lien Law, and there is a very real possibility that the surety would suffer a loss if it were to complete the job.

Here, the School District has most recently claimed that the payment of $214,000 to DOL was not a diversion of trust assets because all claims had been paid. Nowhere in the School District's briefs to this Court is this argument mentioned. Rather, the School District argued that the "payment of the subject funds was for a *trust purpose*—to pay for work performed

by DJH on the School's project," and accused the surety of "[trying] relentlessly to spin the [School District's] payment . . . as one for non-trust purposes, arguing that because the payment was apparently used by *DJH* and the *DOL* for a purportedly unrelated project it was, allegedly, for a non-trust purpose." Then, at oral argument, the School District abruptly abandoned that view and partially adopted the surety's position (which it had decried in its brief) that the funds were used for a non-trust purpose. The School District argued that all trust claims had been paid at the time the payment to DOL was made, and that DJH was free to spend those funds as it pleased, thereby implying that the funds were indeed used for a non-trust purpose, but that such use was allowed under the circumstances. The School District has either been unable or unwilling to commit to one of these two contradictory positions and that is because neither is reasonable. The majority saves the School District from its "flip-flopping" by concluding erroneously that "whether the School District's payment of contract funds to DOL as DJH's assignee violated the Lien Law is irrelevant to Nova's surety obligation" (majority op at 37). It is difficult to fathom, however, that with respect to the incomplete HVAC project, all trust claims had been paid.

Contrary to the majority's view (that the violation of the Lien Law is "irrelevant") the School District's violation of the Lien Law matters, and it matters a great deal. The majority first acknowledges that a surety is not obligated to complete a construction job if it can demonstrate that it has a right to discharge due to the actions of another party, then inexplicably goes on to state that Nova has no right to rely on the School District's violation of the Lien Law as a basis for discharge because it is not a completing surety. But Nova does not claim that it is "subrogated to the rights of the article 3-A trust beneficiaries as a completing surety" (*see* majority op at 37), nor does it argue that it has the same rights as a completing surety, and it certainly does not "lack[ ] capacity to raise any alleged violation of the Lien Law" (*id.*) as the majority suggests. Rather, Nova simply asserts, and rightly so, that it has the same rights as any other surety—rights that are enforceable well before any possibility of completion arises. Nova was no longer under any obligation to complete the HVAC project once the School District illegally diverted the funds to the DOL. Nova is, of course, entitled to raise the issue insofar as it supports Nova's legitimate breach of contract defense that, in making the payment,

the School District breached the performance bond and discharged Nova from its obligation to complete the project upon DJH's default.

The Lien Law violation is highly relevant, especially where, as here, the performance bond contains a provision in essence prohibiting diversions of trust fund assets. The plain language of the performance bond demonstrates that the surety sought to insulate itself from "obligations of the Contractor that are unrelated to the Construction Contract." That language is unambiguous and should be enforced. That the $214,000 was earned as a progress payment does not render the diversion any less a violation of the performance bond's prohibition on reducing or setting off the balance of the contract price for any of DJH's unrelated obligations. The majority is under the impression that because the funds paid were earned (and therefore did not represent prepayment or overpayment of contract funds) the performance bond was not violated. However, prepayment and overpayment are simply examples of actions that would have violated the School District's obligations to the surety. They are not the *only* actions that would entitle the surety to discharge.[2] Indeed, the majority fails to provide any explanation whatsoever regarding how the diversion of $214,000 that could have been applied toward the completion of the HVAC job did not harm the surety's interests and did not violate the performance bond. By sending the funds elsewhere, the School District certainly satisfied DOL's request but it also made it impossible for those funds to be used to complete the HVAC project, thereby increasing the risk that DJH would run out of money prior to finishing the job. The School District was not entitled, after having increased the risk of DJH's default, to then recover from the surety on a breach of contract theory. As I cannot agree with the majority's reasoning that Nova has not demonstrated its entitlement to be discharged from its obligations under the performance bond which the School District breached, I respectfully dissent and would modify the Appellate Division's order to dismiss the School District's complaint.

---

**2.** Indeed, the majority seems to acknowledge that this is not an exhaustive list (*see* majority op at 36 [noting that "where an obligee . . . increases the risks imposed on the surety by *such acts as* modifying the duties of the principal-contractor, extending the time for the principal's performance, or making overpayments or premature payments, the surety may be discharged" (emphasis added)]).

Judges GRAFFEO, READ, SMITH and PIGOTT concur with Judge CIPARICK; Chief Judge LIPPMAN dissents in part in a separate opinion in which Judge JONES concurs.

Order affirmed, without costs.