Egan Jr., J.
Appeal from an order of the Supreme Court (Guy, J.), entered August 6, 2014 in Broome County, which, among other things, partially granted plaintiffs motion for summary judgment.
The underlying action concerns a construction project at the State University of New York at Binghamton — a property located in the Town of Vestal, Broome County and owned by defendant Dormitory Authority of the State of New York. LeChase Construction Services, LLC was the general contractor for the project and defendant Maxim Construction Service Corporation was the site contractor. Insofar as is relevant here, Maxim entered into a subcontract with plaintiff to provide certain landscaping services for the project.* Although Maxim paid plaintiff a total of $192,126.40 for its work on the project, plaintiff claimed that it was owed an additional $106,994.27 for labor and materials provided in connection therewith. Plaintiff filed a mechanic’s lien in this amount in May 2012, in response to which LeChase apparently withheld $160,491.41 — a sum representing IV2 times the value of plaintiff’s lien — from Maxim’s payment.
Plaintiff commenced this action in May 2013, and Supreme Court granted Maxim’s subsequent motion to extend its time to answer the complaint. Upon appeal, this Court affirmed (126 AD3d 1105 [2015]). In the interim, plaintiff demanded that Maxim furnish a verified statement (see Lien Law § 76 [1]) and, when that statement was not forthcoming, moved to compel its production. By order entered January 3, 2014, Supreme Court, among other things, directed Maxim to respond to plaintiff’s demand within 10 days of notice of entry thereof. Although Maxim subsequently supplied a verified statement, plaintiff deemed it to be deficient and thereafter moved to, among other things, compel Maxim to fully respond to its demand. Supreme Court agreed that the verified statement provided by Maxim failed to comply with the provisions of Lien Law § 76 and, among other things, awarded plaintiff summary judgment on the issue of liability. Maxim now appeals.
Pursuant to Lien Law article 3-A, owners, contractors and *1411 subcontractors are required to maintain funds in trust in order to “provide [ ] protection to certain parties involved in the improvement of real property, ensuring that they will be properly compensated for their services” (Sabol & Rice v Poughkeepsie Galleria Co., 175 AD2d 555, 556 [1991]; see Lien Law §§ 70, 71; NY Professional Drywall of OC, Inc. v Rivergate Dev., LLC, 100 AD3d 216, 218 [2012]; Kemper Ins. Cos. v State of New York, 70 AD3d 192, 196 [2009]). Specifically, and insofar as is relevant here, “[t]he funds received by a contractor or subcontractor . . . shall be a separate trust and the contractor or subcontractor shall be the trustee thereof” (Lien Law § 70 [2]). A trustee, in turn, is required to, among other things, maintain books or records with respect to each trust, detailing the trust assets receivable, trust accounts payable, trust funds received, trust payments made with trust assets and transfers in repayment of or to secure advances made pursuant to a notice of lending (see Lien Law § 75 [2], [3] [A] - [E]; Matter of Bette & Cring, LLC v Brandle Meadows, LLC, 81 AD3d 1152, 1153-1154 [2011]). A beneficiary of such a trust is entitled to, among other things, “receive a verified statement setting forth the entries with respect to the trust contained in such books or records” (Lien Law § 76 [1] [b]; see NY Professional Drywall of OC, Inc. v Rivergate Dev., LLC, 100 AD3d at 218; Matter of Bette & Cring, LLC v Brandle Meadows, LLC, 81 AD3d at 1153-1154). “Any use of the trust funds other than the payment of claims under the contract . . . is an improper diversion of trust assets” (Kemper Ins. Cos. v State of New York, 70 AD3d at 196 [citation omitted]; see NY Professional Drywall of OC, Inc. v Rivergate Dev., LLC, 100 AD3d at 218), and the trustee’s failure to keep the statutorily required books and records “shall be presumptive evidence that the trustee has applied or consented to the application of trust funds ... for purposes other than a purpose of the trust” (Lien Law § 75 [4]).
Initially, to the extent that Maxim contends that plaintiff is not entitled to demand a verified statement in the first instance because no trustee-beneficiary relationship existed between plaintiff and Maxim, we need note only that this argument is raised for the first time on appeal and, hence, is unpreserved for our review (see Liere v State of New York, 123 AD3d 1323, 1324 [2014]; Matter of Prevratil, 121 AD3d 137, 142 n 1 [2014]). In any event, inasmuch as Maxim’s project manager averred — in the context of the verified statement tendered— that Maxim entered into a subcontract with plaintiff, and the table of trade accounts appended thereto reflects that Maxim maintained funds from which it paid plaintiff for work performed on the project, we are satisfied that Maxim was a *1412 subcontractor trustee. Hence, Maxim was required to maintain the statutory trust (see Lien Law §§ 70 [1], [3]; 71). Moreover, even assuming — as Maxim contends — that LeChase has bonded plaintiff’s mechanic’s lien, plaintiff still “is entitled to a verified statement setting forth trust entries” (Matter of Bette & Cring, LLC v Brandle Meadows, LLC, 81 AD3d at 1155).
As for the substance of Maxim’s verified statement, we agree with Supreme Court that the statement provided is deficient in a number of respects. As a starting point, the verified statement fails to set forth the dates and amounts of the trust assets receivable, trust accounts payable or trust funds received as required by Lien Law § 75 (3) (A)-(C). Indeed, Maxim concedes that “the [v]erified [statement . . . does not set forth the exact date each payment was made.” Additionally, the verified statement does not provide a sufficiently detailed breakdown of the total amount of payments made with trust funds (see Lien Law § 75 [3] [D]). In this regard, Maxim’s submissions reflect that it received a total of $10,644,066.42 from LeChase and, in turn, paid a total of $6,485,269.19 to the various trades employed in connection with the project. Although a portion of this more than $4 million gap may be attributable to direct labor and equipment costs paid by Maxim, a sizeable sum remains unaccounted for, and the tabular data contained in the verified statement simply lacks the level of detail required by the statute. Finally, Maxim failed to provide a complete accounting of its trust assets receivable as required by Lien Law § 75 (3) (A). Although Maxim indeed attached a dollar figure to the total open change order items that had been submitted, it again failed to provide the level of specificity required by the statute.
As noted previously, a trustee’s failure to keep the statutorily required books and records “shall be presumptive evidence that the trustee has applied or consented to the application of trust funds . . . for purposes other than a purpose of the trust” (Lien Law § 75 [4]). In light of the documented deficiencies in Maxim’s verified statement — deficiencies that Maxim has failed to remedy despite ample opportunity to do so — and absent any reasonable explanation for Maxim’s shortcomings in this regard (see generally Medco Plumbing, Inc. v Sparrow Constr. Corp., 22 AD3d 647, 648 [2005]), Maxim failed to overcome the statutory presumption of an improper diversion of trust assets; hence, Supreme Court properly awarded plaintiff summary judgment on the issue of liability (see e.g. L.D. Wenger Constr. Co., Inc. v UnBuildlt, Inc., 73 AD3d 864, 864-865 [2010]). Maxim’s remaining contentions, to the extent not specifically *1413 addressed, have been examined and found to be lacking in merit.
Garry, J.P., Rose and Lynch, JJ., concur. Ordered that the order is affirmed, with costs.

 The precise form of this contractual relationship is not clear from the record. Maxim contends that its agreement with plaintiff was reduced to a written contract, whereas plaintiff asserts that, after submitting a written proposal, it received verbal authorization to proceed with the work.