# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**124**

**CA 13-00285**

PRESENT: SCUDDER, P.J., FAHEY, PERADOTTO, LINDLEY, AND SCONIERS, JJ.

---

A&M GLOBAL MANAGEMENT CORP.,
PLAINTIFF-RESPONDENT-APPELLANT,

V                                                    MEMORANDUM AND ORDER

NORTHTOWN UROLOGY ASSOCIATES, P.C., DEFENDANT,
JOHN M. ROEHMHOLDT, DEFENDANT-APPELLANT-RESPONDENT,
AND JACEK T. SOSNOWSKI, DEFENDANT-RESPONDENT.
(APPEAL NO. 1.)

---

DAMON MOREY LLP, BUFFALO (MICHAEL J. WILLETT OF COUNSEL), FOR
DEFENDANT-APPELLANT-RESPONDENT.

HOGAN WILLIG, PLLC, AMHERST (ROBERT MICHALAK OF COUNSEL), FOR
PLAINTIFF-RESPONDENT-APPELLANT.

HURWITZ & FINE, P.C., BUFFALO (EARL K. CANTWELL OF COUNSEL), FOR
DEFENDANT-RESPONDENT.

---

Appeal and cross appeal from a judgment of the Supreme Court,
Erie County (John A. Michalek, J.), entered October 17, 2012. The
judgment awarded plaintiff money damages against defendant John M.
Roehmholdt and dismissed plaintiff's claims against defendant Jacek T.
Sosnowski.

It is hereby ORDERED that the judgment so appealed from is
unanimously affirmed without costs.

Memorandum: Defendants John M. Roehmholdt and Jacek T. Sosnowski
were the sole directors and equal shareholders of defendant Northtown
Urology Associates, P.C. (Northtown), and both were employed by
Northtown as physicians. Northtown leased from plaintiff certain
office space for a 10-year-term beginning in March 2004.

Sometime in 2006, Sosnowski began negotiations to move his
practice out of state and, either at the end of October or in early
November of that year, he signed a contract to do so. On November 20,
2006, Sosnowski advised Roehmholdt of his intention to move out of
state, and the two, through their attorneys, subsequently entered into
negotiations to determine the extent of Northtown's obligations to
Sosnowski under their existing employment and buy/sell agreements.
Sosnowski accepted the majority of the medical equipment and certain
office furniture owned by Northtown in full satisfaction of
Northtown's obligations to him, acceding to that arrangement only

because Northtown refused to satisfy its obligations to him in cash. Sosnowski ceased practicing with Northtown by mid-January 2007, and he resigned as a director of the corporation on or about January 23, 2007, tendering his stock to the corporation on that same date.

At that time, Roehmholdt did not believe that he could continue Northtown's practice without the assistance of another physician, nor did he believe that he could have recruited another physician in sufficient time to continue the Northtown practice. Consequently, in mid-December 2006, Roehmholdt began employment negotiations with another urology practice, Western New York Urology Associates (WNYUA). WNYUA was not interested in Northtown's medical equipment or its office space, but was interested in employing Roehmholdt and accepting his patients, and Roehmholdt was eventually hired by WNYUA.

In conjunction with his hiring at WNYUA and at WNYUA's expense, on or about January 15, 2007, Roehmholdt sent a letter to his and Sosnowski's patients informing them that, starting on February 5, 2007, he would practice with WNYUA, that "all office appointments [would] be seen at [WNYUA], and that patients were free to pick up their medical records from him if they wished to see a different urologist." Roehmholdt also stated in the letter that, "[i]n considering how [he] could best continue to serve all of the patients in the practice, [he] came to the conclusion that joining a strong, progressive group that practices caring and competent urology would serve [patients] best. [WNYUA] enjoys a well earned reputation as a leader in its field and offers to its patients state of the art care." He further stated in the letter that he would "continue to see all patients as before, just in a different office location."

On February 2, 2007, Sosnowski picked up the agreed-upon medical equipment and office furniture and moved out of state. Northtown subsequently vacated the premises it leased from plaintiff and, beginning with the March 2007 payment, ceased paying rent to plaintiff. Plaintiff commenced this action seeking damages for, inter alia, Northtown's alleged breach of its lease with plaintiff. Supreme Court (Curran, J.), granted in part plaintiff's motion seeking summary judgment against Northtown on the first through fourth and sixth causes of action by granting partial summary judgment against Northtown on liability on the first, second and sixth causes of action, which alleged, respectively, that Northtown was in default under the lease, that plaintiff was entitled to recover from Northtown money that it had expended for Northtown's specialized use of the property, and that Northtown was obligated to pay plaintiff reasonable attorneys' fees and costs associated with this action. The court also granted plaintiff a money judgment against Northtown on the third cause of action, which alleged that Northtown was liable for certain operating costs. In addition, the court, inter alia, granted the respective cross motions of Roehmholdt and Sosnowski for summary judgment dismissing the eighth "cause of action," by which plaintiff sought to pierce Northtown's corporate veil in order to recover damages from Roehmholdt and Sosnowski individually, but also afforded plaintiff leave to amend the complaint "to re-plead any facts necessary to add allegations for recovery against . . . Sosnowski and

Roehmholdt on the basis of piercing the corporate veil."

Plaintiff subsequently served a revised amended complaint in which it asserted additional facts supporting its attempt to pierce Northtown's corporate veil in order to recover damages from Roehmholdt and Sosnowski individually. Defendants joined issue through separate answers, and the matter eventually proceeded to a bench trial, prior to which the parties stipulated that the damages against Northtown would be $200,000. Following trial, Supreme Court (Michalek, J.), granted a judgment that, inter alia, awarded plaintiff money damages against Roehmholdt pursuant to the theory of piercing the corporate veil, dismissed plaintiff's remaining causes of action against Roehmholdt, including the seventh cause of action, for fraudulent conveyance, and dismissed the revised amended complaint against Sosnowski. Following further motion practice, the court granted an order that, inter alia, awarded Sosnowski attorneys' fees and costs against plaintiff. That order also awarded plaintiff attorneys' fees and costs against Roehmholdt, but the amount awarded was less than what plaintiff had requested. In appeal No. 1, Roehmholdt appeals and plaintiff cross-appeals from the judgment and, in appeal No. 2, plaintiff appeals from the order.

Contrary to Roehmholdt's contention in appeal No. 1, we conclude that the court did not err in piercing the corporate veil and finding Roehmholdt personally liable for Northtown's obligations to plaintiff. As a preliminary matter, we note that, "[o]n an appeal from a judgment rendered after a nonjury trial, our scope of review is as broad as that of the trial court (*see Matter of Capizola v Vantage Intl.*, 2 AD3d 843, 844 [2003]). Upon such a review, the record should be 'viewed in the light most favorable to sustain the judgment' (*Farace v State of New York*, 266 AD2d 870, 871 [1999]; *see Parone v Rivers*, 84 AD2d 686 [1981]), and this Court should evaluate 'the weight of the evidence presented and grant judgment warranted by the record, giving due deference to the trial court's determinations regarding witness credibility, so long as those findings could have been reached upon a fair interpretation of the evidence' (*New York Tel. Co. v Harrison & Burrowes Bridge Contrs.*, 3 AD3d 606, 608 [2004] [internal quotation marks and citations omitted]). '[T]he decision of the fact-finding court should not be disturbed upon appeal unless it is obvious that the court's conclusions could not be reached under any fair interpretation of the evidence, especially when the findings of fact rest in large measure on considerations relating to the credibility of witnesses' (*Thoreson v Penthouse Intl.*, 80 NY2d 490, 495 [1992] [internal quotation marks omitted], *rearg denied* 81 NY2d 835)" (*Matter of Syracuse Indus. Dev. Agency [Alterm, Inc.]*, 20 AD3d 168, 170).

With respect to piercing the corporate veil, we note that it is not " 'a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners' " (*Nasca v DelMonte*, 111 AD3d 1427, 1429, quoting *Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141). " 'A plaintiff seeking to pierce the corporate veil must establish that the

owners, through their domination, abused the privilege of doing business in the corporate form, thereby perpetrating a wrong that resulted in injury to the plaintiff . . . Factors to be considered in determining whether [a corporation] has abused [that] privilege . . . include whether there was a failure to adhere to corporate formalities, inadequate capitalization, commingling of assets, and use of corporate funds for personal use' " (*Abbott v Crown Mill Restoration Dev., LLC*, 109 AD3d 1097, 1101; *see Last Time Beverage Corp. v F & V Distrib. Co., LLC*, 98 AD3d 947, 951; *Fantazia Intl. Corp. v CPL Furs N.Y., Inc.*, 67 AD3d 511, 512).

The burden of establishing that the corporate veil should be pierced is a heavy one (*see Colonial Sur. Co. v Lakeview Advisors, LLC*, 93 AD3d 1253, 1255) but " '[b]roadly speaking, the courts will disregard the corporate form, or, to use accepted terminology, pierce the corporate veil, whenever necessary to prevent fraud or to achieve equity' " (*Matter of Mercury Factoring, LLC v Partners Trust Bank*, 75 AD3d 1101, 1103, quoting *Morris*, 82 NY2d at 140). "A decision to pierce the corporate veil is a fact-laden [determination]" (*Abbott*, 109 AD3d at 1101 [internal quotation marks omitted]), and "[n]o one factor is dispositive" (*Fantazia*, 67 AD3d at 512).

Applying those rules here, and viewing the evidence in the light most favorable to sustain the judgment (*see Farace*, 266 AD2d at 871), we conclude that the court's decision to pierce the corporate veil to hold Roehmholdt liable for Northtown's obligations to plaintiff is supported by a fair interpretation of the evidence (*see generally Alterm, Inc.*, 20 AD3d at 170). The record establishes that Roehmholdt made no effort to continue the Northtown business and, through his solicitation of Northtown clients, took much more lucrative employment at WNYUA. Moreover, the record also establishes that Roehmholdt chose not to "cash out" Sosnowski from Northtown, subsequently wrote to Northtown's clients and took them as his own, used approximately $80,000 in Northtown funds to satisfy a line of credit for which he was personally liable and which may have encumbered Northtown's accounts receivable, issued a check for approximately $1,800 to himself for "Northtown . . . expenses," and paid for the collection of Northtown's accounts receivable.

Contrary to plaintiff's contention on its cross appeal in appeal No. 1, we conclude that the court properly granted the motions of Roehmholdt and Sosnowski for a directed verdict pursuant to CPLR 4401 seeking dismissal of the cause of action for fraudulent conveyance. "It is well settled that a directed verdict is appropriate where the . . . court finds that, upon the evidence presented, there is no rational process by which the fact trier could base a finding in favor of the nonmoving party . . . In determining whether to grant a motion for a directed verdict pursuant to CPLR 4401, the trial court must afford the party opposing the motion every inference which may properly be drawn from the facts presented, and the facts must be considered in a light most favorable to the nonmovant" (*Brenner v Dixon*, 98 AD3d 1246, 1247 [internal quotation marks omitted]). Plaintiff's cause of action for fraudulent conveyance was based on

Debtor and Creditor Law §§ 273 and 276 and, pursuant to section 273, "[e]very conveyance made and every obligation incurred by a person *who is or will be thereby rendered insolvent* is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration" (emphasis added). "A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured" (§ 271 [1]).  Here, plaintiff failed to establish the "insolvency" element of section 273 inasmuch as it failed to demonstrate that Northtown was insolvent at the time of the conveyances at issue (*see Colacino v Poyzer*, 178 AD2d 964, 966; *see also Matter of Steele*, 85 AD3d 1375, 1377).  Thus, plaintiff failed to establish Debtor and Creditor Law § 273 as a basis for the cause of action for fraudulent conveyance.

Next, Debtor and Creditor Law § 276 provides that "[e]very conveyance made and every obligation incurred with actual intent . . . to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."  A creditor seeking legal redress pursuant to that section must prove by "clear and convincing evidence that a defendant had the [actual] intent to hinder, delay or defraud creditors" (*Jensen v Jensen*, 256 AD2d 1162, 1162 [internal quotation marks omitted]) and, because direct evidence of fraudulent intent is often elusive, "courts will consider 'badges of fraud' which are circumstances that accompany fraudulent transfers so commonly that their presence gives rise to an inference of intent" (*Dempster v Overview Equities*, 4 AD3d 495, 498, *lv denied* 3 NY3d 612 [internal quotation marks omitted]).  Badges of fraud include:  (1) a close relationship between the parties to the transfer; (2) the inadequacy of consideration; (3) the transferor's knowledge of the creditor's claims and the transferor's inability to pay them; (4) the retention of control of the property by the transferor after the conveyance; (5) the fact that the transferred property was the only asset sufficient to pay the transferor's obligations; (6) the fact that the same attorney represented the transferee and transferor; and (7) a pattern or course of conduct by the transferor after it incurred its obligation to the creditor (*see Cadle Co. v Organes Enters., Inc.*, 29 AD3d 927, 928; *Dempster*, 4 AD3d at 498).  We note, however, that the presence of one or more badges of fraud does not necessarily compel the conclusion that a conveyance is fraudulent (*see Taylor-Outten v Taylor*, 248 AD2d 934, 935).

Here, even assuming, arguendo, that there was a close relationship between Northtown to Sosnowski in the transfer of the medical equipment and office furniture, i.e., that there was evidence of the first badge of fraud, we conclude that such transfer was for adequate consideration and, thus, that plaintiff failed to establish the presence of the second badge.  In view of Northtown's accounts receivable, the transferred assets were not the only assets by which Northtown could have satisfied its obligations to plaintiff, and thus plaintiff failed to establish the presence of the fifth badge.  Moreover, the assets were not retained by the transferor, Northtown, after the conveyance, and the same attorney could not have represented

both Northtown and Sosnowski, and thus plaintiff failed to establish the presence of the fourth and sixth badges, respectively. Although the seventh badge—concerning a pattern or course of conduct—arguably applies here, the transfer of office and medical equipment probably benefitted Northtown in the short term inasmuch as it allowed Northtown to avoid outlaying cash, and thus any such pattern or course of conduct did not impair Northtown's ability to pay its rent to plaintiff and, thus, plaintiff failed to establish the presence of the third badge. Consequently, under those circumstances and mindful of the deferential standard of review, we decline to disturb the court's determination with respect to Debtor and Creditor Law § 276 as a basis for the cause of action for fraudulent conveyance inasmuch as plaintiff failed to establish sufficient badges of fraud to give rise to an inference of fraudulent intent.

Contrary to plaintiff's further contention on its cross appeal in appeal No. 1, we conclude that the court did not err in granting a directed verdict in favor of Sosnowski on the issue of piercing the corporate veil. Viewed in the light most favorable to the nonmoving party (*see generally Szczerbiak v Pilat*, 90 NY2d 553, 556; *Brenner*, 98 AD3d at 1247), the record establishes that, on November 30, 2006, Sosnowski announced that he would resign from Northtown effective February 2, 2007, and that Sosnowski had only one conversation with Roehmholdt after Sosnowski tendered his resignation and before Sosnowski actually left the practice on January 23, 2007. The record further establishes that Sosnowski only reluctantly accepted equipment and furniture, instead of cash, in satisfaction of Northtown's obligations to him, and that he had no part in Roehmholdt's decision to shutter the Northtown practice and encourage its patients to treat with Roehmholdt's new employer, WNYUA.

We reject plaintiff's contention in appeal No. 2 that the court erred in awarding attorneys' fees, costs and expenses against Roehmholdt in an amount less than plaintiff had requested. "Under the general rule in New York, attorneys' fees are deemed incidental to litigation and may not be recovered unless supported by statute, court rule or written agreement of the parties" (*Flemming v Barnwell Nursing Home & Health Facilities, Inc.*, 15 NY3d 375, 379, citing *Hooper Assoc. v AGS Computers*, 74 NY2d 487, 491). Here, there is no dispute that plaintiff is entitled to an award of fees from Roehmholdt—the lease between Northtown and plaintiff provides for an award of attorneys' fees in favor of plaintiff because plaintiff prevailed in this action and, even as a nonparty to the lease, Roehmholdt is responsible for that award by virtue of the court piercing Northtown's corporate veil. With respect to the amount of the court's award, we note that, "[i]n evaluating what constitutes . . . reasonable attorney[s'] fee[s], factors to be considered include the time and labor expended, the difficulty of the questions involved and the required skill to handle the problems presented, the attorney's experience, ability, and reputation, the amount [of money] involved, the customary fee charged for such services, and the results obtained" (*Matter of Dessauer*, 96 AD3d 1560, 1561 [internal quotation marks omitted]). "[I]t is well settled that a trial court is in the best position to determine those

factors integral to fixing [attorneys'] fees . . . and, absent an abuse of discretion, the trial court's determination will not be disturbed" (*Pelc v Berg*, 68 AD3d 1672, 1673 [internal quotation marks omitted]). Upon our review of the record, we conclude that the court did not abuse its discretion in fixing that award.

Finally, we agree with plaintiff in appeal No. 2 that the court erred in awarding attorneys' fees and costs to Sosnowski (*see generally Flemming*, 15 NY3d at 379), and we therefore modify the order accordingly. " '[A] court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is *unmistakably clear* from the language of the promise' " (*Mount Vernon City Sch. Dist. v Nova Cas. Co.*, 19 NY3d 28, 39, quoting *Hooper Assoc.*, 74 NY2d at 492). "Furthermore, a party may not recover attorneys' fees arising from litigation with the other party to a contract unless an intent to provide for such reimbursement 'is unmistakably clear from the language of the promise' " (*Colonial Sur. Co. v Genesee Val. Nurseries, Inc.*, 94 AD3d 1422, 1423, quoting *Hooper Assoc.*, 74 NY2d at 492). Here, Sosnowski sought attorneys' fees under an article of the lease between Northtown and plaintiff that states, in relevant part, that "in the event that any legal matter, dispute, action or proceeding exists or is commenced by or between the *Lessor* and *Lessee* under this Lease, the prevailing party shall be entitled to reasonable attorney's fees in such matter" (emphasis added). Inasmuch as the lease defines the "lessor" as plaintiff and the "lessee" as Northtown, we are constrained to conclude that the court erred in awarding attorneys' fees and costs to Sosnowski, a nonparty to the lease, because the lease contains no authority for such an award (*cf. Colonial Sur. Co.*, 94 AD3d at 1423; *see generally Hooper Assoc.*, 74 NY2d at 492), and there is no basis for holding him responsible for Northtown's obligations to plaintiff.

Entered:  March 28, 2014                    Frances E. Cafarell
                                            Clerk of the Court