Suzanne P. v Joint Bd. of Directors of Erie-Wyoming County Soil Conservation Dist. (2021 NY Slip Op 02968)





Suzanne P. v Joint Bd. of Directors of Erie-Wyoming County Soil Conservation Dist.


2021 NY Slip Op 02968


Decided on May 7, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 7, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., CARNI, LINDLEY, CURRAN, AND BANNISTER, JJ.


1205 CA 19-02264

[*1]SUZANNE P., ADMINISTRATRIX OF THE ESTATE OF MITCHELL P., DECEASED, PLAINTIFF-RESPONDENT,
v
JOINT BOARD OF DIRECTORS OF ERIE-WYOMING COUNTY SOIL CONSERVATION DISTRICT, ALSO KNOWN AS THE ERIE-WYOMING JOINT WATERSHED BOARD, DEFENDANT-APPELLANT. 






WALSH, ROBERTS & GRACE, BUFFALO (MARK P. DELLA POSTA OF COUNSEL), FOR DEFENDANT-APPELLANT. 
PAUL WILLIAM BELTZ, P.C., BUFFALO (WILLIAM A. QUINLAN OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 


 Appeal from an order of the Supreme Court, Erie County (Mark J. Grisanti, A.J.), entered December 3, 2019. The order, among other things, granted plaintiff's motion for a directed verdict. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, plaintiff's motion is denied, defendant's motion is granted, and the complaint is dismissed.
Memorandum: As summarized in our decision on the prior appeal in this matter (Suzanne P. v Joint Bd. of Directors of Erie-Wyoming County Soil Conservation Dist., 175 AD3d 1093 [4th Dept 2019]), plaintiff commenced this action against various entities, including defendant, seeking damages for the death of her son (decedent). Decedent had initially entered Buffalo Creek, at a location in the Town of West Seneca, with several friends to clean off after getting muddy while engaged in recreation along nearby trails. As the group waded and swam in the creek, decedent went over a waterfall created by a low head dam, was submerged, and sustained drowning injuries that ultimately proved fatal. The subject dam, part of a project to control creek flow and flooding, was one of several designed and constructed in the 1950s by a federal agency now known as the Natural Resources Conservation Service (NRCS) and subsequently operated and maintained by defendant pursuant to certain contracts with the NRCS, including a governing operation and maintenance agreement (agreement).
Supreme Court granted the summary judgment motions of the other entities, but denied defendant's motion for such relief, and we subsequently affirmed in the prior appeal. With respect to defendant's motion, we rejected the contention that defendant had established as a matter of law that it did not owe decedent a duty of care (id. at 1094). Initially, we agreed with defendant that, assuming its potential liability was premised solely on its obligations under the agreement with the NRCS, the court erred in determining that the third exception in Espinal v Melville Snow Contrs. (98 NY2d 136, 140 [2002]) applied because, we reasoned, the agreement was not so comprehensive and exclusive that it entirely displaced the NRCS's duty to maintain the premises safely (Suzanne P., 175 AD3d at 1095). Contrary to defendant's contention, however, we further concluded that "it failed to eliminate triable issues of fact regarding ownership of the subject dam" (id.). We held that, "[w]hile [defendant] established that it did not own the creek or the banks adjacent thereto . . . , its submissions [were] insufficient to establish as a matter of law that it did not own the subject dam, which allegedly constituted and created the dangerous condition" (id.). We rejected defendant's contention that the deposition testimony of a district field manager for one of the two conservation districts whose board [*2]members comprise defendant established that defendant was a contractor only and not an owner because the district field manager had actually testified in his deposition that he did not know who owned the dams (id.). We also reasoned that "the language of the agreement, which was submitted by [defendant] in support of its motion, indicate[d] that ownership of the dams may have been transferred to [defendant], and [defendant] failed to establish as a matter of law that no such transfer could or did occur" (id.).
The court subsequently conducted the first phase of a bifurcated trial on the issue of ownership only. Following plaintiff's presentation of evidence, defendant moved for a directed verdict pursuant to CPLR 4401 on the ground that, in contrast to the summary judgment record previously before this Court, the evidence at trial established that defendant did not own the dams. Plaintiff opposed the motion and moved for a directed verdict in her favor. The court reserved decision on the motions, and the jury then returned a verdict finding that defendant did not own the dams at the time of decedent's accident. The court thereafter granted plaintiff's motion for a directed verdict, denied as moot defendant's motion for a directed verdict, and awarded plaintiff judgment, as a matter of law, that defendant owned the subject dam structure at the time of decedent's accident. Defendant appeals, contending that the court should have granted its motion. We agree.
It is well settled that "a directed verdict is appropriate where the . . . court finds that, upon the evidence presented, there is no rational process by which the fact trier could base a finding in favor of the nonmoving party . . . In determining whether to grant a motion for a directed verdict pursuant to CPLR 4401, the trial court must afford the party opposing the motion every inference which may properly be drawn from the facts presented, and the facts must be considered in a light most favorable to the nonmovant" (A & M Global Mgt. Corp. v Northtown Urology Assoc., P.C., 115 AD3d 1283, 1287-1288 [4th Dept 2014] [internal quotation marks omitted]; see Szczerbiak v Pilat, 90 NY2d 553, 556 [1997]).
Here, even affording plaintiff every inference that may properly be drawn from the evidence presented—i.e., the testimony of the district field manager and the agreement—and considering the evidence in a light most favorable to her, we conclude that there is no rational process by which the jury could reach a finding that defendant owned the subject dam at the time of decedent's accident (see Bentley v City of Amsterdam, 170 AD2d 725, 725-726 [3d Dept 1991], lv denied 78 NY2d 858 [1991]). First, unlike the unilluminating deposition testimony relied upon by defendant in support of its earlier summary judgment motion (cf. Suzanne P., 175 AD3d at 1095), the district field manager's testimony at trial, which was based on his experience and his understanding of the operation of the agreement, conveyed that defendant did not own the subject dam.
Second, with respect to the agreement, we determined on the prior appeal based on defendant's submissions and the rationales advanced by the parties (see generally Misicki v Caradonna, 12 NY3d 511, 519 [2009]) that "the language of the agreement . . . indicate[d] that ownership of the dams may have been transferred to [defendant], and [defendant] failed to establish as a matter of law that no such transfer could or did occur" (Suzanne P., 175 AD3d at 1095). We agree with defendant that the evidence at the subsequent trial, as supported by the legal arguments advanced by defendant in support of its motion for a directed verdict, established that there is no rational basis upon which to conclude that such a transfer could have occurred. The evidence at trial demonstrated that the NRCS constructed the dams, which were permanently affixed to land underlying Buffalo Creek, for the purpose of reducing the water velocity in that section of the creek. Thus, as argued by defendant in support of its CPLR 4401 motion and on appeal, the dams are structures that constitute fixtures annexed to the realty and are part thereof (see Matter of Metromedia, Inc. [Foster & Kleiser Div.] v Tax Commn. of City of N.Y., 60 NY2d 85, 90 [1983]; Matter of First Fed. Sav. & Loan Assn. of Syracuse v Srogi, 105 AD2d 1081, 1081 [4th Dept 1984]). Inasmuch as the trial evidence also established the NRCS had no ownership interest in Buffalo Creek or the abutting land, no transfer of ownership of the subject dam by NRCS could have occurred under the terms of the agreement given that " '[a] grantor cannot convey what the grantor does not own' " (Nationstar Mtge., LLC v Goodman, 187 AD3d 1635, 1637 [4th Dept 2020]; see O'Brien v Town of Huntington, 66 AD3d 160, 167 [2d Dept 2009], lv dismissed and appeal dismissed 14 NY3d 935 [2010], lv denied 21 NY3d 860 [2013]). In other words, contrary to plaintiff's assertions, the NRCS had no "[t]itle to real property," including the dams, that could "vest in [defendant]" pursuant to the terms of the agreement.
Based on the foregoing, we conclude that the court erred in denying defendant's motion for a directed verdict.
Entered: May 7, 2021
Mark W. Bennett
Clerk of the Court