# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 8
Suzanne P., &c.,
   Appellant,
  v.
Joint Board of Directors of
Erie-Wyoming County Soil
Conservation District, &c., et
al.,
   Respondents.

William A. Quinlan, for appellant.
Jeremy C. Toth, for respondent County of Erie.
Paul F. Hammond, for respondent Town of West Seneca.
Mark P. Della Posta, for respondent Joint Board of Directors of Erie-Wyoming County Soil Conservation District.
Justin L. Hendricks, for respondent Erie County Soil and Water Conservation District.
Philip C. Barth III, for respondent Wyoming County Soil and Water Conservation District.

CANNATARO, J.:

This appeal arises from the tragic death of a teenage boy who drowned after swimming near a low-head dam on Buffalo Creek in Erie County. The principal issue is whether the courts below erred in ordering a directed verdict following a jury trial on the

- 1 -

issue of whether the Joint Board of Directors of Erie-Wyoming County Soil Conservation District (the Joint Board) owned the dam.  Based on the record and arguments before us, we hold that neither plaintiff nor the Joint Board was entitled to a directed verdict on that question.

I.

Plaintiff commenced this negligence and wrongful death action following the death of her 14-year-old son (the child) from injuries sustained while he and several friends were swimming in the waters of Buffalo Creek near structures known as the Earsing Sills low-head dams.  As the group swam in the creek, the child was pulled underwater by an undertow-like phenomena associated with the dams known as "hydraulic boil," causing drowning injuries that ultimately proved fatal.  Despite several prior drownings in the vicinity of the dams, there were no signs posted in the area warning of the dangerous condition.

The dams in question were constructed in the mid-20th Century as part of a stream bank stabilization project funded by the federal government under the Flood Control Act of 1944 (58 Stat 887).  They were designed, constructed, and installed by the National Resources Conservation Service (NRCS), a federal agency.[1]  The specific dam at issue is located within Erie County (the County), but the broader federal project crosses the territory of both the Erie County Soil & Water Conservation District and the Wyoming County Soil & Water Conservation District (the Districts), two natural resource

---

[1] NRCS was previously known as the Soil Conservation Service.

conservation agencies formed to carry out flood prevention measures within their respective borders (*see* Soil & Water Conservation Districts Law §§ 5, 9).

The sole defendant remaining in this case at the time of trial, the Joint Board, was created by the State in 1949 to be the local "sponsor" of the federal project and is comprised of all members of the boards of directors of the Districts, sitting jointly (*see* L 1949, ch 374). First in 1959, and again in 1984 when the dams needed reconstruction, the Joint Board entered into operation and maintenance agreements with NRCS relating to the dams. The agreements required the Joint Board to obtain "permanent easements" from landowners permitting the construction and operation of the dams, and allocated to the Joint Board ongoing duties to inspect and maintain the dams. The 1984 agreement notably also provides that "[t]itle to real property shall vest in the [Joint Board]," and that "[r]eal property means land, including land improvement, structures, and appurtenances thereto, excluding movable machinery and equipment."

Plaintiff commenced this action to hold defendants liable for failing to warn of the danger posed by the hydraulic boil condition. Following dismissal of the claims against the Districts, County, and Town of West Seneca (the Town), and multiple appeals to the Appellate Division, the case proceeded to a jury trial on the singular question of whether the Joint Board owned the dams at the time of the accident, which would provide a basis for negligence liability. Plaintiff attempted to prove that the Joint Board acquired ownership of the dams from NRCS pursuant to the 1984 agreement. The sole witness called at trial was the field manager for Erie District, who testified that he had participated in Joint Board meetings and inspections of the dams for over two decades and did not

believe the Joint Board owned the dams. He also testified that the Joint Board does not own any property, that its inspection and maintenance obligations are minimal, and that the Joint Board must obtain permission from NRCS before making any alterations or improvements to the dams. Plaintiff declined to submit into evidence copies of the permanent easements obtained from landowners.

At the close of evidence both plaintiff and the Joint Board moved for directed verdicts. Plaintiff relied primarily on the language of the 1984 agreement. The Joint Board argued, among other things, that the dams must be deemed "fixtures" that run with the land and belong to the owner(s) of that underlying realty, who the Joint Board posited is either the State or adjacent landowners. The Joint Board also argued that the provisions of the 1984 agreement transferring title to "land, including land improvement, structures, and appurtenances thereto," did not encompass the dams because it is undisputed that NRCS has never owned the underlying land to which they are affixed. Supreme Court reserved decision on the motions. After the jury returned a verdict in favor of the Joint Board, the court granted plaintiff's motion, holding as a matter of law that the Joint Board acquired ownership of the dams from NRCS pursuant to the 1984 agreement.

The Joint Board appealed and the Appellate Division reversed, denying plaintiff's motion for a directed verdict and granting the Joint Board's motion for a directed verdict. The Court held that "there is no rational process by which the jury could reach a finding that defendant owned the subject dam at the time of [the child's] accident" (194 AD3d 1483, 1485-1486 [4th Dept 2021]). The Court reasoned that NRCS could not have transferred ownership of the dams to the Joint Board in the 1984 agreement because the

dams are "permanently affixed to land underlying Buffalo creek" and thus "constitute fixtures," ownership of which runs with the land (*see id.* at 1486, citing, inter alia, *Matter of Metromedia, Inc. v Tax Commn. of City of N.Y.*, 60 NY2d 85, 90 [1983]). We granted plaintiff leave to appeal.

II.

The primary question on this appeal is whether the trial evidence supported a directed verdict for either plaintiff or the Joint Board on the issue of ownership of the dams. A motion for a directed verdict should be granted only when there is no rational process by which the jury could find in favor of the opposing party (*see e.g.*, *Vintage, LLC v Laws Constr. Corp*, 13 NY3d 847, 849 [2009]; *Bradley v Earl B. Feiden, Inc.*, 8 NY3d 265, 273 [2007]; *Thompson v New York*, 60 NY2d 948, 950 [1983]; *Cohen v Hallmark Cards, Inc.*, 45 NY2d 493, 499 [1978]). In determining whether to grant such a motion, the court must view the evidence in the light most favorable to the opposing party (*Vintage*, 13 NY3d at 849).

Contrary to the Appellate Division's conclusion, the evidence that the dams are firmly affixed to the creek bed is insufficient to establish as a matter of law that ownership of the dams runs with the land; the intent of the NRCS and landowners must also be considered (*see* 59 NY Jur 2d, Fixtures § 2; *Matter of Metromedia, Inc.*, 60 NY2d at 90; *see also New York City Council v City of N.Y.*, 4 AD3d 85, 91-92 [1st Dept 2004] [recognizing the "prevailing rule" in other jurisdictions that "railroad structures and appurtenances placed upon the land of another pursuant to an easement are personalty, not realty, absent a showing that such structures were intended to be merged with the realty"],

*lv denied* 4 NY3d 701 [2004]).  Neither party introduced evidence sufficient to eliminate

triable issues of fact regarding such intent.  Nor did plaintiff establish that the provisions

of the 1984 agreement transferring title to "real property" unambiguously encompass the

dams.[2]  Because there was a rational process by which a jury could find in favor of either

plaintiff or the Joint Board on the ownership issue, neither party was entitled to a directed

verdict.  The case accordingly must be remanded to Supreme Court for reinstatement of

the jury verdict.[3]

Plaintiff also seeks review of those portions of the Appellate Division's prior orders

that resolved plaintiff's claims against the Districts, County, and Town (*see* 175 AD3d

---

[2] Contrary to the dissent's assertion, the Joint Board contested plaintiff's interpretation of these provisions both on motion for a directed verdict and before the jury and has never conceded the issue or abandoned its contrary interpretation (*see* transcript of oral argument dated Jan. 5, 2023, at 32-33).  In any event, plaintiff cannot succeed on this appeal without demonstrating that her interpretation is correct as a matter of law, which she has not done. Nor can plaintiff succeed without establishing that NRCS had an ownership interest in the dams to convey under the 1984 agreement (194 AD3d at 1486 [collecting authorities]), which as noted above depends on the intent of NRCS and the relevant landowners.

[3] Prior to trial, plaintiff offered an alternative ground for holding the Joint Board liable:  that the Board assumed a duty of care under the 1984 agreement by undertaking responsibility for maintaining the dams.  The Appellate Division rejected that theory on summary judgment, finding that the 1984 agreement "was not so comprehensive and exclusive that it entirely displaced . . . NRCS's duty to maintain the premises safely, such that the [Joint] Board owed a duty to [the child]" (175 AD3d at 1094-1095 [internal quotation marks and brackets omitted]; *see Espinal v Melville Snow Contrs.,* 98 NY2d 136 [2002]).  In granting plaintiff's motion for a directed verdict, Supreme Court noted that in light of the Appellate Division's ruling, "issues regarding the *Espinal* case . . . [had] already been decided," and thus a duty could be imposed on the Joint Board only if it was found to be the owner of the dams.  The Appellate Division's ruling on the applicability of *Espinal* is not before us on the instant appeal, and we express no opinion on whether it would or will provide a basis for liability.  We further note that plaintiff's claims against the State have not been finally decided.

1093 [4th Dept 2019]; 175 AD3d 1097 [4th Dept 2019]; 175 AD3d 1098 [4th Dept 2019]; 153 AD3d 1635 [4th Dept 2017]).  Having carefully considered the parties' arguments, the record below, and the unique facts of this case, we hold that plaintiff has not identified any basis for us to overturn the Appellate Division's resolution of those claims.  We therefore affirm those orders insofar as appealed from.

Accordingly, the order appealed from should be modified, without costs, by denying the CPLR 4401 motion by the Joint Board and, as so modified, affirmed; the prior Appellate Division orders insofar as brought up for review should be affirmed; and this case should be remitted to Supreme Court for further proceedings in accordance with this opinion.

TROUTMAN, J. (dissenting in part):

I respectfully dissent. Plaintiff's 14-year-old son was swimming in a creek with friends when a strong current flowing over a low-head dam held him under water until he drowned; he was hospitalized and died from his injuries a few days later. There is no

- 1 -

dispute that prior to this tragedy, four people had previously drowned as a result of the "hydraulic boil" created by dams operated and maintained by the Joint Board of Directors of Erie-Wyoming County Soil Conservation District (Joint Board).  The hydraulic boil that led to their deaths is a hidden hazard for which each defendant claims not to be responsible,[1] even though some of them were aware of the hazard and delayed posting warning signs.  The idea that the Joint Board—which all agree is contractually responsible for the operation and maintenance of the dams, which was created specifically to receive federal funds to assist it with those operations, and which signed a contract taking title to the dams—can walk away from this lawsuit without a full trial is unconscionable.

Here, the only issue at trial was whether the Joint Board owned the particular dam creating the latent danger that caused the death of the young decedent.  Supreme Court granted judgment as a matter of law to plaintiff on that discrete issue.  That ruling was correct.  Given the unambiguous provision in the 1984 operation and maintenance agreement—by which the National Resources Conservation Service (NRCS), a federal agency, conveyed the dam to the Joint Board—there was no rational process by which the jury could reach a finding that the Joint Board did not own the dam at the time of the decedent's accident.  Consequently, plaintiff was entitled to a judgment as a matter of law that the Joint Board owned the dam.

---

[1] The low head dams on Buffalo Creek in the Town of West Seneca are artificial structures characterized by a concealed risk in the form of a phenomenon referred to as "hydraulic boil."  The hydraulic boil is a latent condition—unknown to the public at large—that occurs when water flowing over the dam, under high flow conditions, falls in upon itself and creates a re-circulative effect in the water below the dam.

I.

"A trial court's grant of a CPLR 4401 motion for judgment as a matter of law is appropriate where the trial court finds that, upon the evidence presented, there is no rational process by which the fact trier could base a finding in favor of the nonmoving party" (*Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997]; *see Vintage, LLC v Laws Constr. Corp*, 13 NY3d 847, 849 [2009]).  In determining whether to grant such a motion, the court must view the evidence in the light most favorable to the opposing party (*see Szczerbiak*, 90 NY2d at 556; *Vintage*, 13 NY3d at 849).  Applying this standard, the majority correctly rejects the Joint Board's contention, accepted by the Appellate Division, that fixture law compels the conclusion that NRCS lacked a transferable ownership interest in the dams in 1984.

However, the majority errs in holding that plaintiff is not entitled to a judgment as a matter of law because of a purported ambiguity in the language of the 1984 agreement and because plaintiff did not submit evidence of the intentions of NRCS and the underlying property owner when the dam was built because of a cryptic and unsubstantiated distrust of NRCS's right to convey the dam to the Joint Board under the agreement, which was entered into by officers of both federal and state entities.  Contrary to what the majority contends, plaintiff merely needed to prove ownership by a preponderance of the evidence, as provided in the verdict sheet, which plaintiff did by entering the unambiguous 1984 agreement into evidence and eliciting testimony that the agreement was still effective.

The Joint Board does not dispute, and has never disputed, that the plain language of the 1984 agreement purports to convey title to the dam, regardless of who owned the land

beneath it.  Instead, what they contend is that this contractual language was ineffective to convey title to the dam because as a matter of fixture law NRCS could not convey ownership of a dam sitting upon land that it did not own.  Although the Joint Board has claimed to be confused by the conveyance of the dam set forth in the 1984 agreement (*see* majority op at 6 n 2), that confusion stemmed merely from the Joint Board's incorrect view that, as a matter of law, ownership of the dam must run with ownership of the land beneath it (*see* transcript of oral argument dated Jan. 5, 2023, at 31-36).  The majority correctly rejects that contention (*see* majority op at 5, citing *Matter of Metromedia, Inc. [Foster & Kleiser Div.] v Tax Commn. of City of N.Y.*, 60 NY2d 85, 90 [1983] [holding that one can own a structure, defined as "real property," without owning the property underneath it (*see id*. at 89-91)]).

Nevertheless, the majority insists on reading into the 1984 agreement an ambiguity that is simply not there.  They also fail to explain either the nature of the ambiguity or any preserved alternative reading of the contract that has not been abandoned by the Joint Board on this appeal.  Instead, the majority opts to raise in conclusory fashion the prospect of an unidentified ambiguity that they claim somehow throws the agreement into doubt.

## II.

In the absence of anyone articulating an alternative reading of the 1984 agreement, we are left with what Supreme Court held was the sole issue of the trial, who is the "owner of the dam?"  As the majority agrees, the 1984 agreement relied on by plaintiff constituted prima facie evidence of the Joint Board's ownership of the dam, which follows from the

majority's holding that the Joint Board failed to meet its burden of establishing its right to judgment as a matter of law (*see e.g. Hill v St. Clare's Hosp.*, 67 NY2d 72, 82 [1986]; *Holy Temple First Church of God in Christ v City of Hudson*, 17 AD3d 947, 947 [3d Dept 2005]). Consequently, although the burden of proof never shifts, the Joint Board had "the burden of going forward, that is, [of] offering evidence to contradict [plaintiff's] prima facie case" (Prince, Richardson on Evidence § 3-202; *see Matter of Powers v Powers*, 86 NY2d 63, 69 [1995]; *Farmers' Loan & Tr. Co. v Siefke*, 144 NY 354, 359 [1895] ["(W)hen the plaintiff has established a *prima facie* case, the defendant is bound to controvert it by evidence, otherwise he will be cast in judgment"]). Although "[n]o legal obligation requires parties to introduce sufficient rebuttal evidence when the burden of going forward is placed upon them," their "[f]ailure to meet that burden . . . may subject [them] to the risk of a . . . directed verdict" (Prince, Richardson on Evidence § 3-202; *see generally St. Andrassy v Mooney*, 262 NY 368, 370-373 [1933]).

Once plaintiff submitted the 1984 agreement, she not only established a prima facie case of ownership, but she also proved ownership by a preponderance of the evidence. As Supreme Court astutely asked, "how do you get around the language [of the 1984 agreement]" stating that "the structure [i.e., dam] vest[s] with the Sponsor [i.e., the Joint Board]?" It is because the Joint Board remains unable to answer that question rationally that the evidence preponderates in plaintiff's favor.

Contrary to the majority's conclusion, even affording the Joint Board "every inference which may properly be drawn from the facts presented," "there is no rational

process by which the [jury] could base a finding in favor of the [Joint Board]" (*Szczerbiak*, 90 NY2d at 556). Without a shred of probative evidence to contradict the plain language of the 1984 agreement, the Joint Board has little choice but to rely on the purely speculative testimony of Marc Gaston. He is the field manager for the Erie County Soil & Water Conservation District (Erie District) that has board members serving on the Joint Board in conjunction with board members of the Wyoming County Soil & Water Conservation District. However, Gaston testified to no facts from which a rational jury could infer either that the Joint Board did not own the dam or that he would somehow know if it did. Gaston, a layperson who was not involved in the drafting of the 1984 agreement, testified that he did not "believe" the Joint Board owns the dam, but he undercut that testimony by candidly admitting that he did not know who owns it.

When asked at trial for the basis of his belief that the Joint Board does not own the dam, he responded: "I base my belief on how we've operated for the last twenty years." It is worth noting, however, that Gaston was not an employee of the Joint Board, rather he was an employee of the Erie District, and his connection to the dam was limited to performing maintenance on it at his employer's request. Gaston's answer suffers from the fallacy of being a non sequitur. How does knowledge of who owns a dam necessarily follow from one's experience operating and maintaining the dam? It does not.

Additionally, when Gaston was asked at trial for any additional basis for his opinion that the Joint Board did not own the dam, he was capable of offering nothing more than ill-informed conjecture: "Because the Joint Board doesn't own anything, in my eyes. They

don't have an office.  They don't have a staff.  They don't have anything."[2]  Thus, the Joint

Board's attempt to overcome the evidence of ownership contained in the 1984 agreement

is supported improperly by Gaston's mere speculation (*see Feblot v New York Times Co.*,

32 NY2d 486, 494 [1973] ["a jury finding based on speculation is a nullity"]).  This is so

even considering Gaston's additional testimony that the Joint Board's inspection and

maintenance obligations are minimal and that the Joint Board must obtain permission from

NRCS before making any alterations or improvements to the dams.

A jury could not fairly infer from the Joint Board's lack of staff or office that it does

not own anything, much less that it does not own the dam.  By statute, the Joint Board can

acquire property (*see* Soil & Water Conservation Districts Law §§ 9 [4]; 10).  And the

evidence is uncontested that a chairman of the Joint Board signed the 1984 agreement

---

[2] Although outside the record, and certainly not a basis for this dissent, it is worth noting that the federal government might be surprised to learn that the Joint Board does not own anything.  According to the National Inventory of Dams maintained by the U.S. Army Corps of Engineers, the "Erie-Wyoming Counties Soil Conservation District" owns the "East Br Cazenovia Creek Legion Dam" (https://nid.sec.usace.army.mil/#/dams/system/NY01246/summary; *see generally* https://www.fema.gov/emergency-managers/risk-management/dam-safety/national-inventory-dams).  That said, despite the dangers posed by low-head dams, "[t]here is no nationwide inventory of low-head dams" (Rollin H. Hotchkiss and Forrest R. Hansen, *Low-head Dams: Status and Legal Issues*, 20 The Journal of Dam Safety 1 [2023], available at https://www.asce.org/-/media/asce-images-and-files/communities/institutes-and-technical-groups/environmental-and-water-resources/documents/2023-lhds-status-legal-issues.pdf [accessed Dec. 28, 2023]).  Surely, *someone* owns the dam.  The true owner should not be a great mystery, particularly to the entity that has undertaken the responsibility of maintaining it.

transferring title of the dam to the Joint Board. Moreover, there has been no assertion that it was improper for the chairman to do so on behalf of the Joint Board.

The mere fact that the 1984 agreement gave NRCS the right to inspect the dam, required the Joint Board to consult with it before modifying the dam, and placed only minimal maintenance obligations on the board did not contradict the agreement's provision conveying title to the dam. Those provisions are essentially no different than any sale of property containing an easement or lawful restrictive covenant, and they do not lead rationally to an inference that title never passed to the Joint Board.

Accordingly, Supreme Court properly granted plaintiff's motion for judgment as a matter of law inasmuch as there was no rational process by which a jury could base a finding that the Joint Board did not own the dam (*see Szczerbiak*, 90 NY2d at 556). Inasmuch as the majority holds otherwise, I dissent.

Order appealed from modified, without costs, by denying the CPLR 4401 motion by defendant Joint Board of Directors of Erie-Wyoming County Soil Conservation District and, as so modified, affirmed; prior Appellate Division orders insofar as brought up for review affirmed; and case remitted to Supreme Court, Erie County, for further proceedings in accordance with the opinion herein. Opinion by Judge Cannataro. Judges Garcia, Singas and Halligan concur. Judge Troutman dissents in part in an opinion, in which Chief Judge Wilson and Judge Rivera concur.

Dated January 16, 2024